## IN THE UNITED DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **RETTA MARLENE POWERS, CAROL ANNE LOMBARD, DEBORAH ROBINSON, THERESA HELLUMS, and VERONICA MERKADEL, on behalf of themselves and others similarly situated,** | ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **vs.** | ) **CIVIL ACTION NUMBER:** ) **09-556** ) |
| | ) **JURY DEMAND** |
| **AUTOMOTIVE COMPUTER SERVICES, INC. and EXPRESS SERVICES, INC.** | ) ) ) ) |
| **Defendants.** | ) |

## COLLECTIVE ACTION COMPLAINT

**COME NOW** the Plaintiffs, Retta Marlene Powers, Carol Anne Lombard,

Deborah Robinson, Theresa Hellums, and Veronica Merkadel, and file this lawsuit

against Defendants, Automotive Computer Services, Inc. and Express Services, Inc.,

for themselves and all others similarly situated, pursuant to §207 and §216(b) of the

Fair Labor Standards Act (hereinafter "FLSA") and for this cause of action state the

following:

1

1.      Defendant, Automotive Computer Services, Inc., ("ACS") is a corporation conducting business in the State of Alabama.

2.      ACS creates, leases, installs, and services a proprietary Dealer Management System called ACCESS ("Software") for car dealerships throughout the USA. This Software is used by the car dealerships to run their sales and leasing, parts and service, and/or accounting departments. ACS provides support for the Software through two business components: (1) continued research and development to enhance the Software and (2) customer training and troubleshooting so that the customer's of ACS can learn how to use the Software. This customer training and troubleshooting is supplied by ACS through technical representatives, called Level I Support Technicians ("Technicians"), who are located at the offices of ACS. Technicians train and troubleshoot via the telephone, through on-site training sessions at the customer's car dealership(s) called Training Weeks ("Training Weeks"), and through on-site mentoring sessions at the dealership(s) called Go Live Weeks ("Go Live Weeks"). Some Technicians are permanently employed by ACS and others are temporary employees at ACS, who are supplied by Express Services, Inc. ("Express").

3.     Express is a corporation conducting business in the State of Alabama. Express is a personnel service which provides individuals to work as temporary Technicians at ACS.

4.     Plaintiff Retta Marlene Powers resides in Mobile, Alabama. From September of 2007 to July of 2008, Powers was employed by ACS as a Technician, performing all standard Technician duties, including troubleshooting assistance via telephone from ACS's Mobile, Alabama office and traveling to various car dealerships around the USA to perform Training Weeks and Go Live Weeks.

5.     Plaintiff Carol Anne Lombard resides in Mobile, Alabama. From September 22, 2008 to March 31, 2009, Lombard was employed by ACS as a Technician, preforming all standard Technician duties, including troubleshooting assistance via telephone from ACS's Mobile, Alabama office and traveling to various car dealerships around the USA to perform Training Weeks and Go Live Weeks.

6.     Plaintiff Deborah Robinson resides in Mobile, Alabama. From May of 2007 to September of 2008, Robinson was employed by ACS as a Technician, performing all standard Technician duties, including troubleshooting assistance via telephone from ACS's Mobile, Alabama

3

office and traveling to various car dealerships around the USA to perform Training Weeks and Go Live Weeks.

7.    Plaintiff Theresa Hellums resides in Mobile, Alabama. From January of 2008 to June of 2008, and again in November of 2008, Hellums was employed by ACS as a Technician, performing all standard Technician duties, including troubleshooting assistance via telephone from ACS's Mobile, Alabama office and traveling to various car dealerships around the USA to perform Training Weeks and Go Live Weeks.

8.    Plaintiff Veronica Merkadel resides in Mobile, Alabama. From November of 2008 to March of 2009, Merkadel was employed by Express to work as a temporary Technician at ACS.  She performed all standard Technician duties during the time she worked at ACS, including troubleshooting assistance via telephone from ACS's Mobile, Alabama office and traveling to various car dealerships around the USA to perform Training Weeks and Go Live Weeks.

9.    This action is brought pursuant to the FLSA, 29 U.S.C. §201 et seq. and, specifically, the collective action provision of the Act found at §216(b), for equitable and declaratory relief and to remedy violations of the wage provisions of the FLSA by Defendants, which have deprived Plaintiffs,

4

and all other similarly situated, present and former, permanent and temporary Technicians at ACS of their lawful wages.

10. This action is brought to recover unpaid compensation, in the form of overtime, owed to the Plaintiffs, and all similarly situated, present and former, permanent and temporary Technicians at ACS, pursuant to the FLSA. For at least three years prior to the filing of this complaint, Defendants have had a uniform policy and practice of consistently requiring all Technicians to work over 40 hours a week when performing Training Weeks and Go Live Weeks at car dealerships for a salaried amount without overtime compensation.

11. Plaintiffs Powers, Lombard, Robinson, and Hellums, and all other similarly situated, present and former, permanent Technicians at ACS were paid a starting salary between $25,000 and $30,000 per year regardless of the number of hours they were required to work when performing Training Weeks and Go Live Weeks at car dealerships.

12. Plaintiff Merkadel, and all other similarly situated, present and former, temporary Technicians at ACS, were hired by Express to work as temporary Technicians at ACS. They were paid $400 per week regardless of the number of hours they were required to work and

performed the same duties and had the same hours of work as permanent Technicians. Temporary Technicians were required to take part in Training Weeks and Go Live Weeks at car dealerships, just like permanent Technicians.

13.     Plaintiffs and, on information and belief, all similarly situated, present and former, permanent and temporary Technicians were hired by defendants without a requirement that they have a background in computer technology or any knowledge of the operations of an automobile dealership. The work performed by Technicians does not require any specific computer expertise and such expertise is not possessed by them.

14.     After receiving training from ACS, Plaintiffs and, on information and belief, all similarly situated, present and former, permanent and temporary Technicians are routinely required to work more than 40 hours a week during Training Weeks and Go Live Weeks at car dealerships, without compensation for any time worked over 40 hours. During these Training Weeks and Go Live Weeks, each of which could last five days at a time, or more, Technicians normally traveled out of town to car dealership customers of ACS in groups of 3, one for each

6

department- sales and leasing, accounting, and/or parts and services. During these Training Weeks and Go Live Weeks, Technicians are provided with a written training schedule determined and set up by ACS. On these Training Weeks and Go Live Weeks, Technicians work from early in the morning until the dealership closes, or later - often twelve to fifteen hours per day.

15. In performing their work as Technicians, Plaintiffs perform non-managerial duties and functions involving little, or no, independent judgment and do not customarily and regularly exercise any discretion. Rather, Technicians are given precise instructions by ACS on how to train and how to respond to inquiries by the employees of ACS's customers. Technicians are forbidden by ACS from providing employees of customers with any advice on any topics, others than those specifically delineated for them by ACS. Technicians simply respond to questions from the employee(s) of ACS's customers regarding the Software that has been installed at their dealerships. If the answer to the question of the customer's employee(s) was provided to the Technicians during their training by ACS, or in the information provided to the Technicians by ACS, the answer is provided to the employee(s) of the

customer, as written.  If the answer to the question was not provided to the Technicians by ACS as a part of their training, or in the information given to them, Technicians are required to call/e-mail ACS and retrieve the answer to the question, which they may then provide to the customer's employee(s). On information and belief, all Technicians of ACS have these same duties and responsibilities.

16.   Plaintiffs' duty, as well as the duty of all other similarly situated, present and former,  permanent and temporary Technicians, is to train ACS's customers either over the telephone or during Training Weeks or Go Live Weeks at the dealership, in accordance with ACS's prescribed specifications, regarding the proper use of the Software leased to the car dealerships by ACS.  In performing their duties and responsibilities, Technicians do not develop, design, market or lease the ACS Software used by the car dealership customers of ACS.

17.   Plaintiffs, and all other similarly situated, present and former, permanent and temporary Technicians, do not have any employees of their own and do not have the authority to hire, fire, promote, determine starting pay for, give pay raises to, discipline or train employees of ACS. Nor do they make any effective recommendations regarding these actions. They

8

also do not determine budgets, delegate work assignments, or adopt policies on behalf of the Defendants, or effectively recommend any such actions.

18.   Plaintiffs and, on information and belief, all other similarly situated, present and former, permanent and temporary Technicians perform the same duties and responsibilities, have been treated identically by ACS, and are similarly situated for purposes of their job duties.

19.   Plaintiffs and, on information and belief, all other similarly situated, present and former, permanent and temporary Technicians do not customarily or regularly supervise two or more employees for 80 hours a week.

20.   Plaintiffs and all similarly situated, present and former, permanent and temporary Technicians, who elect to participate in this action, seek unpaid overtime compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b).

21.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§1331. Venue is proper in the Southern Division of the Southern District of Alabama, pursuant to 28 U.S.C. §1391(b).

22.   Defendants are subject to personal jurisdiction in the State of Alabama

for the purpose of this lawsuit.

23.    At all times material to this action, Defendants have been enterprises engaged in commerce or in the production of goods for commerce as defined by §203(s)(1) of the FLSA.

24.    At all times relevant to this action, Defendants were "employers" of Plaintiffs as defined by §203(d) of the FLSA.

25.    At all times material to this action, Plaintiffs, and all others similarly situated, present and former, permanent and temporary Technicians, were "employees" of Defendants as defined by §203(e)(1) of the FLSA. They also  worked for Defendants within the territory of the United States within three years preceding the filing of this lawsuit.

26.    The provisions set forth in §207 of the FLSA apply to Defendants and the Plaintiffs  and all similarly situated, present and former, permanent and temporary Technicians were covered by §207 of the FLSA during their employment with Defendants.

27.    On information and belief, Defendants have intentionally failed and/or refused to pay Plaintiffs and all other similarly situated, present and former permanent and temporary Technicians salary/rates according to the provisions of the FLSA.

28.    Defendants' systems and practices relating to their non-payment of overtime to Plaintiffs and all similarly situated, present and former, permanent and temporary Technicians, which deprive the Defendants of any FLSA overtime exemptions, have existed for at least three years throughout Defendants' businesses.

29.    On information and belief, Defendants have been aware of the requirements of the FLSA and its corresponding regulations and their own violations of the FLSA for at least three years. Despite this knowledge, Defendants have failed to pay the Plaintiffs and their similarly situated, present and former, permanent and temporary Technicians the amount of pay required by the FLSA.

30.    There are numerous similarly situated, present and former, permanent and temporary Technicians of Defendants who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of Court-Supervised Notice of the present lawsuit and the opportunity to join the present lawsuit. These similarly situated employees are known to Defendants and are readily identifiable and can be located through Defendants' records - specifically, all present and former, permanent and temporary Technicians who have been employed

11

at ACS and have not been properly compensated would benefit from Court-Supervised Notice and the opportunity to join the present lawsuit and should be so notified.

31.    On information and belief, Defendants have engaged in a widespread pattern and practice of violating the provisions of the FLSA by failing to pay Plaintiffs and all similarly situated, present and former, permanent and temporary Technicians in accordance with §207 of the FLSA.

32.    As a result of Defendants' violations of the FLSA, Plaintiffs and all other similarly situated, present and former, permanent and temporary Technicians have suffered damages by failing to receive compensation in accordance with §207 of the FLSA.

33.    In addition to the amount of unpaid wages and benefits owed to the Plaintiffs, and all other similarly situated, present and former, permanent and temporary Technicians, they are also entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b) and prejudgment interest.

34.    On information and belief, Defendants' actions in failing to compensate Plaintiffs and all other similarly situated, present and former, permanent

12

and temporary Technicians in violation of the FLSA, were wilful.

35.     On information and belief, Defendants have not made a good faith effort to comply with the FLSA.

36.     Plaintiffs and all other similarly situated, present and former, permanent and temporary Technicians are also entitled to an award of attorney's fees pursuant to 29 U.S.C. §216(b).

37.     Plaintiffs and all other similarly situated, present and former, permanent and temporary Technicians have no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for lost overtime and wages, back-pay, and a declaratory judgment is their only means of securing adequate relief.

38.     Plaintiffs and all other similarly situated, present and former, permanent and temporary Technicians are now suffering, and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

**WHEREFORE,** Plaintiffs, individually and on behalf of all other similarly situated, present and former, permanent and temporary Technicians, pursuant to §216(b) of the FLSA, pray for the following relief:

1.      At the earliest possible time, they be allowed to give notice, or that the

13

Court issue such Notice, to all present and former, permanent and temporary Technicians who have worked at ACS during the three years immediately preceding the filing of this suit, and to all other potential plaintiffs who may be similarly situated, informing them that this action has been filed, the nature of the action, and of their right to opt-into this lawsuit if they worked overtime but were not paid compensation and benefits pursuant to 29 U.S.C. §216(b);

2.    Plaintiffs and all other similarly situated, present and former, permanent and temporary Technicians be awarded damages in the amount of their respective unpaid compensation and benefits, plus an equal amount of liquidated damages pursuant to 29 U.S.C. §216(b), and/or prejudgment interest;

3.    Plaintiffs and all other similarly situated, present and former, permanent and temporary Technicians be awarded reasonable attorneys' fees, including the costs and expenses of this action;

4.    Such other legal and equitable relief including, but not limited to, any declaratory relief to which they may be entitled;

5.    Enter an Order requiring Defendants to make Plaintiffs and all other similarly situated, present and former, permanent and temporary

14

Technicians whole by awarding them lost wages (plus interest) and liquidated damages; and

6.    Plaintiffs further demand a jury to try the issues when joined.

## JURY DEMAND

## THE PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY.

Respectfully submitted,

*/s/ Robert F. Childs, Jr.*
Robert F. Childs, Jr.
Alabama Bar No. ASB-2223-C60R


*/s/ Henry Brewster*
Henry Brewster
Alabama Bar No. BREWH-7377

OF COUNSEL:

WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500 (telephone)
205/254-1500 (facsimile)

15

Stein, Brewster & Pilcher, L.L.C.
205 N. Conception Street
P. O. Box 1051
Mobile, Alabama 36633-1051
(251) 433-2002 (telephone)
(251) 432-7756 (facsimile)

CO-COUNSEL


DEFENDANTS' ADDRESSES:

Automotive Computer Services, Inc.
1209 Orange Street
Wilmington, DE 19801


Express Services, Inc.
2741 Mapleton Avenue
Boulder, CO 80302