**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **RETTA MARLENE POWERS, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION 09-0556-WS-C** |
| | ) |
| **AUTOMOTIVE COMPUTER** | ) |
| **SERVICES, INC., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter is before the Court on the plaintiffs' motion to facilitate notice. (Doc. 46). The defendants have filed responses and the plaintiff a reply, (Docs. 55, 57, 60), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion is due to be granted.

## BACKGROUND

According to the second amended complaint, four of the named plaintiffs were employed by defendant Automotive Computer Services, Inc. ("Automotive") as Technicians. The fifth named plaintiff was employed by defendant Express Services, Inc. ("Express"), which provides Automotive with temporary workers, and she worked as a Technician while working at Automotive.

The second amended complaint alleges that the named plaintiffs and other Technicians were not exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA"). It also alleges that the defendants, for at least three years prior to the filing of the complaint in August 2009, had a uniform policy and practice of consistently requiring all Technicians to work over 40 hours a week for a salaried amount without overtime compensation. The action is brought as a collective action under the FLSA, 29

U.S.C. § 216(b).

## DISCUSSION

"An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (emphasis added). The FLSA thus allows the maintenance of a collective action, and notice to potential class members, if the represented employees are "similarly situated" to the named plaintiffs. *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).[1] The defendants argue that notice should not issue because the named plaintiffs are not similarly situated to the Technicians the second amended complaint describes.

The Eleventh Circuit has recommended that trial courts consider certification under Section 216(b) in two stages. "The first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision — usually based only on the pleadings and any affidavits which have been submitted — whether notice of the action should be given to potential class members." *Hipp*, 252 F.3d at 1218 (internal quotes omitted). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.'" *Id*. (internal quotes omitted).[2]

---

[1] Section 216(b) applies to actions under the Age Discrimination in Employment Act ("ADEA"), and cases (such as *Hipp*) construing Section 216(b) in the ADEA context apply equally to cases brought under the FLSA. *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1014 n.1 (11th Cir. 2007).

[2] Conditional certification is a predicate to notice. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) ("[T]he importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of

At the second stage, in response to a motion to decertify made after discovery, the court makes a more informed factual determination on the similarly situated issue. *Id*. at 1218. While this two-tiered approach is only "suggest[ed]," not "require[ed]," *id.* at 1219, the parties propose no alternative approach, and the Court opts to follow *Hipp*.

At the initial stage, "[t]he plaintiffs bear the burden of demonstrating a reasonable basis for their claim of class-wide discrimination." *Grayson v. K Mart*, 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotes omitted). "The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id*. (internal quotes omitted). "[T]he district court should satisfy itself that there are other employees ... who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Morgan v. Family Dollar Stores, Inc*., 551 F.3d 1233, 1259 (11th Cir. 2008) (internal quotes omitted).

The plaintiffs have done precisely what *Grayson* and *Morgan* envision. Their affidavits assert in some detail that they bore none of the characteristics that could render them exempt; that they routinely were required to work over 40 hours a week without overtime compensation; that the job duties/responsibilities of all Technicians were very similar (suggesting they also were non-exempt); that other Technicians worked overtime hours at a similar rate and without overtime compensation; that there were dozens if not hundreds of such Technicians during the relevant time period; that temporary Technicians acquired through Express were indistinguishable from Automotive's employed Technicians in job duties, hours of work, and lack of overtime compensation; that both

---

the action to similarly situated employees."). Although the plaintiffs have not explicitly requested conditional certification, the defendants do not seek denial of the motion on that basis. Accordingly, and because notice is the natural result of conditional certification, the Court construes the plaintiffs' motion to facilitate notice as encompassing a motion to conditionally certify.

temporary and permanent Technicians routinely worked over 40 hours a week without overtime compensation, both in Automotive's offices and on the road; and that many Technicians, both temporary and permanent, repeatedly discussed how they desired to be compensated for the extra hours they worked. (Doc. 46, Exhibits 2-7; Doc. 60, Exhibits B-D).

The defendants first object that the plaintiffs are not similarly situated to the proposed potential class members because the plaintiffs allege failure to pay overtime only for work performed away from Automotive's offices. That objection has been rendered moot by the Court's recent grant of the plaintiffs' motion for leave to file a second amended complaint, which alleges that the plaintiffs were illegally denied overtime compensation both while on the road and while working in Automotive's offices.

Automotive argues that, despite the second amended complaint, the Court should restrict notice to Technicians who were denied overtime while traveling, but it offers no reason the Court should or even could do so. (Doc. 61 at 5). Express seconds Automotive's motion, explaining that the second amended complaint "does not in any way change their assertion that each of the named Plaintiffs were employed as Technician I's that traveled to various car dealerships around the USA to perform Training Weeks and Go Live Weeks." (Doc. 62 at 3). The argument is inscrutable. The paragraphs to which Express refers simply state, for each plaintiff, that she worked both in Automotive's office and by traveling to various car dealerships. There is nothing inconsistent about alleging that the plaintiffs worked both on the road and in the home office and alleging that they were denied overtime compensation both on the road and in the home office.

Express next argues that the temporary Technicians it supplied are not similarly situated to the Technicians employed by Automotive, because: (1) Express and Automotive are different employers; (2) Express and Automotive treat their employees

differently; and (3) Express and Automotive pay their employees differently. (Doc. 57 at 6-8). As to the first distinction, Express has provided no authority suggesting that employees of a temporary agency that supplies workers to another company are, for that reason alone, not similarly situated to employees of the other company doing precisely the same work. As to the second, Express does not identify any way in which it and Automotive treat their employees differently, much less articulate how any such distinction in treatment is relevant to the inquiry before the Court.

As to the third, Express notes that the plaintiffs' affidavits allege that Automotive's Technician employees were paid an annual salary on a bi-weekly basis, while Express employees who worked for Automotive as Technicians were paid a salary on a weekly basis. (Doc. 57 at 1-2, 3-4). While it is true that the prospective class members should be similarly situated to the plaintiffs "with regard to their pay provisions," *Morgan*, 551 F.3d at 1259 (internal quotes omitted), there is evidence that every member of both sets was paid by salary. Express has offered no authority or argument to support its implicit position that persons performing a job who are paid a salary every week cannot be similarly situated to persons performing the same job who are paid a salary every other week.

Express next argues that its supplied Technicians cannot be similarly situated to Automotive's employed Technicians because the defenses of Express and Automotive are different. (Doc. 57 at 2, 3, 6-7 & 7 n.3).[3] The argument is unavailing, because differences in defenses are considered at the second, de-certification stage, not at the initial, conditional certification stage. *Morgan*, 551 F.3d at 1261-62.

Even could Express show a meaningful difference between Technicians employed by Automotive and those supplied by Express, it could hardly affect the pending motion.

---

[3]In particular, Automotive defends on the grounds that its employees are exempt, while Express concedes its supplied employees are non-exempt but insists they were paid for all hours worked.

As noted, one of the Technicians supplied by Express is a named plaintiff, and other temporary Technicians from Express would be similarly situated to her even if they were not similarly situated to Automotive employees.[4]

Changing tracks, Express argues that the plaintiffs have no evidence that any of its supplied Technicians desire to opt in. (Doc. 57 at 8-9). The plaintiffs' recent affidavits, however, provide this evidence in abundant detail. (Doc. 60, Exhibits B-D).

The plaintiffs have submitted a proposed form of notice. (Doc. 46, Exhibit 1). Automotive objects that the notice creates an appearance of judicial partiality because it states that "the United States District Court for the Southern District of Alabama has authorized the sending of this notice." (Doc. 55 at 4). It is true that, "[i]n exercising the discretionary authority to oversee the notice-giving process, courts ... must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989). However, the Court can detect no violation of this rule in the proposed notice.

In its entirety, the section to which Automotive objects reads as follows:

**V.  NO OPINION EXPRESSED AS TO THE MERITS OF THE CASE.**

    This Notice is for the sole purpose of determining the identity of those persons who wish to be involved in this lawsuit. Although the United States District Court for the Southern District of Alabama has authorized the sending of this notice, the Court expresses no opinion regarding the merits of the Plaintiffs' claims or ACS's or Express' defenses.

The clause challenged by Automotive performs the salutary function of informing recipients that none of the parties is trying to pull a fast one by sending the notice without

------

[4]This disposes as well of Express's insistence that plaintiffs and proposed class members must be victims of a "single" decision, policy or plan. (Doc. 57 at 6, 7). At least as between the named plaintiff supplied by Express and other temporary Technicians, the alleged failure to pay overtime compensation meets that standard.

It is worth noting that "a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b) ...." *Grayson v. K Mart*, 79 F.3d at 1095. Express does not acknowledge *Grayson* or explain why it is inapplicable here.

judicial involvement, and the balance of the provision makes clear beyond cavil that the Court has not endorsed the merits of the action. Other courts have approved similar language. *E.g., Martinez v. Cargill Meat Solutions*, 2009 WL 5034479 at *9 (D. Neb. 2009); *Craft v. Ray's, LLC*, 2008 WL 5458947 at *2 (S. D. Ind. 2008); *Bailey v. Youth Villages, Inc*., 2008 WL 2987201 at *2 (W.D. Tenn. 2008); *Updite v. Delta Beverage Group, Inc*., 2006 WL 3718229 at **7, 9 (W.D. La. 2006) (report and recommendation. Absent explanation or authority, which Automotive does not provide, the Court can find no fault with the proposed language.

Express "request[s] that any notice that be issued ... be agreed upon by all parties." (Doc. 57 at 10). Because Express identifies no deficiency in, or objection to, the notice as proposed by the plaintiffs, the Court will not engage in this idle exercise.

Express does challenge the plaintiffs' proposed consent-to-join form, on two grounds: (1) it fails to address whether the opt-in plaintiff was employed by Automotive or by Express; and (2) it fails to address "the method by which the employee was paid." (Doc. 57 at 9-10). Express does not explain why this information is necessary or even appropriate for such a form. The opt-in plaintiff's employer should be clear since — pursuant to a request by the plaintiffs to which the defendants do not object — the defendants will be required to provide the plaintiffs the names and addresses of potential class members for mailing purposes. (Doc. 46 at 3).[5] The "method" by which each opt-in plaintiff was paid is both vague and, as the plaintiffs note, a subject of dispute in this action (with Express alleging payment by the hour and the plaintiffs payment by salary). Express offers no reason it should be entitled to inject a question that, if answered

---

[5]The plaintiffs seek as well the social security numbers of potential class members. They have not explained why such information is needed or even appropriate, and the Court will not require its production. *See, e.g., Lightsey v. Potter*, 2006 WL 2938715 at *3 (N.D. Ga. 2006) (social security numbers need not be provided in discovery absent a good explanation of their relevance and how such relevance outweighs the privacy interests of the affected persons).

favorably to Express — even if answered incorrectly or without adequate information or reflection — will become a defense exhibit in this litigation.

Express "request[s] that ... the accompanying consent to join form be agreed upon by all parties." (Doc. 57 at 10). Because Express identifies no valid objection to the proposed form, the Court will not require negotiations.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion for conditional certification is **granted**. The class is defined, as it is in the plaintiffs' proposed notice, as "Employees at Automotive Computer Services, Inc. and Express Services, Inc. ... who have held the position of Level I Support Technician since August 27, 2006 and/or who are currently holding this position."

The plaintiffs' motion to facilitate notice is **granted**. The proposed form of notice and proposed consent to join form are **approved**. The defendants are **ordered** to provide to plaintiffs' counsel, within 14 calendar days of the date of this order, the names and addresses of all persons falling within the conditionally certified class.

DONE and ORDERED this 4th day of March, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE